UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRELL DEJUAN ROCHE,

      Petitioner,

v.

MIKE BROWN,

      Respondent.

Case No. 19-cv-11090
Honorable Victoria A. Roberts

---

**OPINION AND ORDER DENYING PETITION, DENYING A CERTIFICATE OF
APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Terrell Dejuan Roche, a prisoner currently confined at the Alger Maximum

Correctional Facility in Munising, Michigan, filed a *pro se* petition for habeas corpus pursuant to

28 U.S.C. § 2254.   He challenges his convictions of first-degree premeditated murder, Mich.

Comp. Laws § 750.316(1)(a); second-degree arson, Mich. Comp. Laws § 750.73; and possession

of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b.

In his initial and amended petitions, he raises ten grounds for relief.   The Court concludes that

Petitioner's claims do not warrant relief and denies the petition. The Court also denies a certificate

of appealability and leave to appeal *in forma pauperis*.

I.      BACKGROUND

On July 18, 2014, a Genesee County jury convicted Petitioner of first-degree premeditated

murder, second-degree arson, and felony-firearm.   The Michigan Court of Appeals adequately

summarized the facts in its opinion on direct appeal; the facts below are presumed to be correct on

habeas review, *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> A jury convicted defendant of fatally shooting his stepfather, Ralph
> Mathews, and setting Matthews's home on fire on October 25, 2005, in the city of
> Flint. The prosecution presented evidence that, after shooting Matthews once in the

head and robbing him of his jewelry, defendant set Matthews's house on fire, using a Molotov cocktail, in an attempt to conceal the murder and destroy the crime scene. The prosecution presented witnesses to whom defendant had confessed his crimes and who later came forward as a result of plea deals in unrelated cases. There was also evidence that, near the time of the offense, defendant went to the home of a friend and asked for a change of clothes because he had committed a robbery. Defendant's original clothing was later recovered and Matthews's DNA was found on defendant's jeans. The defense theory at trial was that the witnesses were unbelievable and had motives to lie and that the police investigation was flawed and unreliable.

*People v. Roche*, No. 323555, 2016 WL 2731063, at *1 (Mich. Ct. App. May 10, 2016) (unpublished).

The trial court sentenced Petitioner as a habitual offender, fourth offense, Mich. Comp. Laws § 769.12, to concurrent terms of life imprisonment for the murder conviction and 20 to 40 years' imprisonment for the arson conviction, to be served consecutively to a two-year term of imprisonment for the felony-firearm conviction.  Petitioner filed a direct appeal with the Michigan Court of Appeals, raising claims concerning evidentiary errors, prosecutorial misconduct, ineffective assistance of counsel, and violation of the Confrontation Clause.  The Michigan Court of Appeals denied relief on his claims and affirmed his convictions.  *Roche*, 2016 WL 2731063, at *12.  On July 25, 2017, the Michigan Supreme Court denied leave to appeal.  *People v. Roche*, 500 Mich. 1057, 898 N.W.2d 213 (2017).

Petitioner then raised new issues in a motion for relief from judgment.  The state trial court denied the motion.  While his appeal from the trial court's decision was pending in the Michigan Court of Appeals, Petitioner commenced this action on September 15, 2017 by filing a motion to hold his habeas corpus petition in abeyance.  Ultimately, the Court stayed and administratively closed the case to allow Petitioner to fully exhaust his state court remedies.  *See* 10/31/19 Order, ECF No. 7.

On April 23, 2019, the Michigan Court of Appeals denied leave to appeal the trial court's ruling on the post-conviction motion.  *People v. Roche*, No. 346298 (Mich. Ct. App. Apr. 23, 2019).  On March 3, 2020, the Michigan Supreme Court denied Petitioner's application for leave to appeal because Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Roche*, 505 Mich. 995, 939 N.W.2d 254 (2020).

On March 19, 2020, Petitioner returned to this Court with his motion to reopen the habeas proceedings and filed an amended petition. Collectively, the initial and amended petitions raise the following claims:

I.  The improper admission of the video of Michael Roche's statement violated Petitioner's constitutional rights to due process. US Const. XIV.

II.  Petitioner's due process right to a fair trial was violated by the admission of improper testimony that Petitioner was guilty of murder. U.S. Const. XIV.

III.  Prosecutorial misconduct deprived Petitioner of his due process right to a fair trial as a result of repeated and deliberate elicitation of gang-related testimony and testimony that Petitioner was guilty of the offenses. US. Const. XIV.

IV.  The trial court abused its discretion by admitting irrelevant evidence.

V.  Petitioner is entitled to a new trial where trial counsel provided constitutionally ineffective assistance in violation of the United States and Michigan Constitutions. US Const. VI.

VI.  Petitioner was denied his Sixth Amendment right to confrontation when the state was allowed to present testimonial hearsay statements made by a firearm and tool mark analyst who did not testify, through the testimony of another analyst who had neither performed or observed the analysis, and even disagreed at trial with the original analyst's results.

VII.  Petitioner was again denied his Sixth Amendment right to confrontation when the state was allowed to present testimonial hearsay statements made by a DNA analyst who did not testify, through the testimony of another analyst who had neither performed or observed any of the testing upon which her testimony was concerned, despite the fact that her testimony provided the most damaging and only physical evidence linking Petitioner to the crime.

3

VIII.   Petitioner was denied his Sixth Amendment right to the effective assistance of counsel when his trial counsel (1) failed to call firearm and tool mark examiner Ronald Ainsley as a witness, and (2) failed to object to evidence in violation of the Confrontation Clause.

IX.   Petitioner was deprived of due process under the Fifth and Fourteenth Amendments when the prosecutor repeatedly elicited testimony regarding the Howard Boys street gang, and then misstated facts that were not in evidence regarding Petitioner's alleged gang affiliation.

X.   Petitioner was deprived of his Sixth Amendment right to the effective assistance of counsel when his appellate attorney failed to raise claims on direct appeal that would have prevailed at that time.

(ECF Nos. 5, 8.)

On July 16, 2020, the Court granted Petitioner's motion and reopened the case. Respondent subsequently filed an answer in opposition to the initial and amended petitions contending that they should be denied because certain claims are procedurally defaulted, and all of the claims lack merit.  Petitioner filed a reply to that answer.

## II.     STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if

the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

## III.   DISCUSSION

The Court notes preliminarily that although Respondent argues that Petitioner has procedurally defaulted all but two of his claims of error, it is not obligated to address that defense because procedural default is not a jurisdictional bar to review of the merits. *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020); *Trest v. Cain*, 522 U.S. 87, 89 (1997)); *see also Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)) ("[F]ederal courts are not required to address a procedural default issue before deciding against the petitioner on the merits[.]")  The Sixth Circuit notes that its own decisions "may sometimes reach the merits of a petitioner's claim, particularly when the merits are easily resolvable against the petitioner while the procedural issues are complicated." *Smith*, 962 F.3d at 207 (citing *Lambrix*,

5

520 U.S. at 525); *see also id.* (finding "resolution of the procedural issues . . . not necessary [and] that the claim is better resolved on the merits").

The procedural default analysis will not affect the outcome of this case, and it is more efficient for the Court to proceed directly to the merits of Petitioner's claims.

A. Evidentiary Error Claims (habeas claims I, II, and IV)

In Petitioner's first, second, and fourth claims, he challenges the trial court's admission of certain evidence during trial. Specifically, he contends that the trial court improperly admitted extrinsic evidence for impeachment purposes, allowed opinion testimony that he was guilty of first-degree murder, and admitted irrelevant gang-related evidence.

To the extent that Petitioner's claims are solely based on state law, they are not cognizable on habeas review. The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *see Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."). An inquiry into whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68. Therefore, Petitioner's claims that state law required exclusion of this evidence are not cognizable on habeas review.

Even if Petitioner's claims are construed as raising due process claims, habeas relief is still not warranted. An evidentiary ruling may violate the Due Process Clause (and thereby provide a basis for habeas relief) where the ruling "is so extremely unfair that its admission violates 'fundamental conceptions of justice.' " *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)). The Supreme Court "defined the

category of infractions that violate fundamental fairness very narrowly." *Estelle,* 502 U.S. at 73 (1991). To violate due process, an evidentiary decision must "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (citation omitted).  For the reasons discussed below, Petitioner fails to establish that the state courts' rulings rose to the level of fundamental unfairness.

     1.  <u>Improper Impeachment Evidence</u>

In his first claim, Petitioner argues that the trial court improperly admitted extrinsic evidence of witness Michael Roche's videoed statement to the police.  Petitioner further asserts that the trial court improperly allowed the prosecution to read aloud witness Javon Meeks' prior statement.  Petitioner argues that the prosecutor submitted the prior inconsistent statements as substantive evidence, rather than for impeachment purposes.

The Michigan Court of Appeals rejected both arguments. With respect to Michael Roche, the court concluded that: "The prosecutor established a proper foundation for the impeachment evidence and, because Michael testified at trial inconsistently with his prior statements, the prosecution was permitted to impeach him with the statements." *Roche*, 2016 WL 2731063, at *2. The court analyzed the exchange between Michael Roche and the prosecutor and determined that "Michael continued to deny, or could not recall, making several specific statements concerning defendant admitting that he shot Matthews, defendant owning a gun, and defendant taking money, jewelry, and drugs from Matthews." *Id*.  The court ruled that allowing the prior statement was appropriate under Michigan Rule of Evidence 613(b) given the testimony. *Id*.  The Michigan Court of Appeals reached a similar conclusion as to the prior statements admitted during the testimony of Javon Meeks.  The court determined that: "Once Meeks testified inconsistently with

his prior statement, the prosecutor was permitted to impeach him with the prior inconsistent statement." *Id.* at 3.

The Michigan Court of Appeals' ruling on this claim is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. "[I]mpeachment evidence . . . generally should be admitted only for the limited purpose of determining the witness's credibility." *Apanovitch v. Houk*, 466 F.3d 460, 486 (6th Cir. 2006). "The prosecution may not employ impeachment by prior inconsistent statement 'as a mere subterfuge to get before the jury evidence not otherwise admissible.'" *Id.* at 485 (quoting *United States v. Buffalo*, 358 F.3d 519, 522-23 (8th Cir. 2004)). In Michigan, the prosecution may impeach its own witnesses, even when the prior inconsistent statement tends to directly inculpate the defendant. *People v. Kilbourn*, 454 Mich. 677, 682; 563 N.W.2d 669 (1997). Moreover, Michigan Rule of Evidence 613(b) "provides that extrinsic evidence of a witness's prior inconsistent statement is admissible if the witness is allowed to explain or deny the statement and an adverse party is given an opportunity to examine the witness." *Roche*, 2016 WL 2731063, at *1. "To satisfy MRE 613(b), 'the proponent of the evidence must elicit testimony inconsistent with the prior statement, ask the witness to admit or deny making the first statement, then ask the witness to admit or deny making the later, inconsistent statement, allow the witness to explain the inconsistency, and allow the opposite party to cross-examine the witness.'" *Id.* (quoting *Barnett v. Hidalgo*, 478 Mich. 151, 165; 732 NW2d 472 (2007)).

The Court agrees that the trial court properly admitted the prior inconsistent statements. Regarding Petitioner's brother, Michael Roche, the exchange between the witness and the prosecution permitted the use of extrinsic evidence under Michigan Rule of Evidence 613(b). When answering the prosecution's questions about specific statements he made to police regarding

Petitioner's role in Matthews' murder, Michael Roche repeatedly responded that he did not remember whether a particular statement was made.  (ECF No. 17-7, PageID.1011-1018.)  At one point, Michael Roche testified that he remembered giving a particular statement, but had lied to the police to "get [himself] out of a situation [he] was in."  (*Id*. at PageID.1017.)  When Roche maintained that he "[could not] honestly . . . remember everything that was said" (*Id*. at PageID.1018), the prosecution then sought to play the video interview for the purpose of refreshing his memory (*Id*. at PageID.1019).  Defense counsel further cross-examined the witness about his statements.  Based on the state-court record before the Court, it is evident that the prosecution properly used the video for the purpose of refreshing the witness' memory and/or for impeachment.  Petitioner fails to show that the prosecution used the impeachment evidence as a "mere subterfuge to get before the jury evidence not otherwise admissible."  *Apanovitch*, 466 F.3d 485.

The Court reaches the same conclusion with respect to prior inconsistent statements admitted during Meeks' testimony.  The prosecution asked Meeks if he "[told] [the FBI] that [Petitioner] had a black handgun in his possession" and that he "saw [Petitioner] with a pinky ring, a bracelet, a package of cocaine that [Petitioner] said he took from Matthews' house."  Meeks testified, "No."  (ECF No. 17-8, PageID.1064).  The State then introduced prior inconsistent statements that Meeks had made to the FBI agent, and asked whether he had made those statements.  (*Id*. at PageID.1064-1065.)  Again, Petitioner fails to demonstrate that the prior inconsistent statements were admitted for an improper purpose.  Because Michigan law allows a prosecutor to impeach a witness by prior inconsistent statements and the trial court instructed the jury that the prior inconsistent statements were only to be used for credibility determinations, the trial court acted properly by admitting the statements.   For these reasons, Petitioner fails to show that a due process violation occurred.

2.  <u>Opinion Testimony</u>

In his second claim, Petitioner argues that the trial court improperly admitted an officer's

opinion testimony that he was guilty of first-degree murder.  The Michigan Court of Appeals

summarized the issue as follows:

> During the prosecutor's direct examination of Sergeant Angus, she elicited how Sergeant Angus had become involved with the case and what he did at the crime scene. In response to defense counsel's questions on cross-examination, the sergeant testified that he did not interview any witnesses on the night of the crime, and later interviewed people who stated that Matthews was a drug dealer. On redirect examination, the prosecutor elicited that Matthews was not a target in the so-called "Howard Boys" investigation; rather, Matthews's homicide case was brought to the sergeant because of the suspects involved. On re-cross-examination, defense counsel asked how many suspects were involved and requested, "aside from Mr. Roche . . . give me the other suspects' names." Sergeant Angus explained that by the time he took over the case, there was not another suspected shooter, although there was a person who was suspected to have been involved with possessing property taken from Matthews. Defense counsel asked, "[I]f I had a report that lists other people as suspects, those would be wrong? There was [sic] never any other suspects in this case?" Defense counsel referred to Declyde Brewton and Leon Gillis. On appeal, defendant contends that in response to the prosecutor's questions on further redirect examination, Sergeant Angus impermissibly expressed his opinion regarding defendant's guilt in the emphasized portions of the following exchange:
>
> Q. Okay. Now, each one of those individuals, some that are on trial right now over at the feds, had different roles, did different things, might have done multiple things, correct?
>
> A. Yes. They support each other.
>
> Q. And now in this particular case you have said a couple of times that there was a suspect that was the shooter? Who was that?
>
> A. Terrell Roche.
>
>                           \* \* \*
>
> Q. Now, Leon Gillis, is he part of the Howard Boys?
>
> A. Yes. He's on trial.
>
> Q. Declyde Brewton, is he part of Howard Boys?
>
> A. Yes, he is.

Q. So, would it surprise you to know that their name[s] might be on a lab report and DNA got sent to the lab to compare in a case like this?

A. No, because I put it there.

Q. Okay, and you would have put it there on a number of other cases as well. Is that correct?

A. That's correct. Just because they were with each other many times.

Q. Okay, and that's what you were doing when you were over at the FBI. That was your focus, Howard Boys, Howard Estates, that area. That gang was right there. That's what you were doing.

A. Correct.

Q. Okay, and in this particular case you were investigating the murder of Ralph Matthews.

A. Yes.

Q. And who did it?

A. Terrell Roche.

Q. You weren't investigating Ralph Matthews as a drug dealer. Is that correct?

A. No. [Emphasis added.]

*Roche*, 2016 WL 2731063, at *4-5.

The Michigan Court of Appeals rejected Petitioner's argument that the testimony invaded the province of the jury to determine whether Petitioner was guilty.  In reaching its conclusion, the court determined that "[t]he gist of the sergeant's testimony was that defendant was the suspected shooter in the context of explaining what and whom he was investigating in this case" and "it [was] apparent that the questions were not asked in an attempt to persuade the jury to convict defendant based on the sergeant's opinion of the defendant's guilt."  *Id*.  Moreover, the court determined that the trial court's instructions to the jury "protected [his] substantial rights."  *Id*.

11

The Michigan Court of Appeals' ruling on this claim is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  The Court first notes that the Supreme Court has yet to rule on the issue of whether a police officer can offer an opinion as to a criminal defendant's guilt or innocence.  *See Carter v. Vashaw*, 627 F. Supp. 3d 853, 861 (E.D. Mich. 2022) (citing *Wright v. Van Patten*, 552 U.S. 120, 126 (2008); *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).  Although Sixth Circuit addressed this issue in *Cooper v. Sowders*, 837 F.2d 284 (6th Cir. 1988), the Court finds it inapplicable to the present case.

 In *Cooper*, the Sixth Circuit held that it was fundamentally unfair and a violation of due process to permit a detective to testify as an expert witness that all the evidence linked the petitioner, and no one else, to the crime.  The Sixth Circuit concluded that "[t]he opinion-testimony had a direct influence on the jury's consideration of petitioner's guilt or innocence." *Id*. at 287.  The Sixth Circuit's holding in *Cooper* does not entitle Petitioner to habeas relief for several reasons.  *Carter*, 627 F. Supp. 3d at 861.  First, Sergeant Angus did not testify as an expert witness at Petitioner's trial.  Second, it is evident from Sergeant Angus' testimony that the statement that Petitioner "did it" was related to the investigation, and not offered for the truth of the matter asserted.   Third, to the extent that the testimony was improper, any error was cured by the trial court's instruction that the jury must judge a police officer's testimony by the same standard as the testimony of any other witness.  (ECF No. 17-8, PageID.1175.)  Fourth, "the *Cooper* court owed no deference to the state court decision on these issues," because *Cooper* was decided prior to the adoption of the AEDPA.  *Id*. (quoting *Dorsey v. Banks*, 749 F. Supp. 2d 715, 758 (S.D. Ohio 2010)).  For these reasons, Petitioner is not entitled to relief on his second claim.

   3.  <u>Admission of Gang-Related Evidence</u>

In Petitioner's fourth claim for habeas relief, he argues that the trial court violated his due process rights by admitting irrelevant and prejudicial testimony that he was involved with the Howard Boys gang.  The Michigan Court of Appeals rejected this argument on the basis that "the general testimony regarding the Howard Boys investigation and the related federal cases and plea deals was relevant to the credibility of the prosecution witnesses and to explain the development of defendant as a suspect during the police investigation, MRE 401, and was not unduly prejudicial, MRE 403."  *Roche*, 2016 WL 2731063, at *9.

Petitioner fails to establish that the introduction of gang-related evidence rendered his trial fundamentally unfair.  As stated by the Michigan Court of Appeals:

> The prosecutor's introduction of evidence related to the Howard Estates and the Howard Boys was not intended to establish "guilt by association," but rather was relevant to the issues in the case. While defendant highlights the "repeated" mention of the Howard Boys, in most cases he ignores the context in which the testimony was elicited, which was part of the complete picture that the prosecution was trying to give the jury. In particular, the testimony regarding the Howard Estates, the Howard Boys, and the pending Howard Boys federal cases was relevant to the credibility of several prosecution witnesses and to explain the development of defendant as a suspect during the police investigation.

*Roche*, 2016 WL 2731063, at *6.

It is true that there exists potential hazard in allowing a prosecutor to present more evidence than necessary to establish a particular fact when the additional evidence encourages the jury to decide the case on an improper basis.  *See, e.g., United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999) (photographs of threatening language in gang graffiti excluded where graffiti could not be linked to defendants directly).  Evidence of gang affiliation can be such an example, and it is generally inadmissible if there is no connection between the gang evidence and the charged offense.  *United States v. Hendrix*, No. 94–1404, 1995 WL 218472, at *3 (6th Cir. Apr. 12, 1995). The Supreme Court has held that evidence of gang-related activity can amount to constitutional

error when the evidence is not relevant to any issue being decided in the proceeding and infringes on a specific constitutional right. *Dawson v. Delaware*, 503 U.S. 159, 160 (1992).  And the Sixth Circuit has stated that "[t]he Supreme Court has never held (except perhaps within the capital sentencing context) that a state trial court's admission of relevant evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F.3d 536, 551 (6th Cir. 2012).

In this case, the gang-related testimony was relevant to the jury's determination of whether Petitioner committed the crimes charged.  The Court agrees with the Michigan Court of Appeals' conclusion that the "testimony that the crimes took place in the Howard Estates, and that several of the witnesses ultimately came forward and testified in exchange for consideration in federal cases involving the Howard Boys, who resided in the Howard Estates, was relevant to assist the jury in its evaluation of witness credibility." *Roche*, 2016 WL 2731063, at *6.  Under Michigan law, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Mich. R. Evid. 401.  The Howard Boys evidence was relevant to establish witness credibility.  The victim was killed in his home located in the Howard Estates neighborhood where Petitioner grew up. Several of the prosecution's witnesses that had resided in that neighborhood were affiliated with the Howard Boys gang and also knew Petitioner.  Because the Howard Boys evidence was clearly relevant, Petitioner fails to establish that his due process rights were violated.

B.  Prosecutorial Misconduct Claims (habeas claims III and IX)

Petitioner asserts that he is entitled to habeas relief because the prosecutor inappropriately elicited gang-related evidence and implied his involvement with the Howard Boys gang.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances.  *Donnelly*, 416 U.S. at 643-45.  To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his or her prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Harrington*, 562 U.S. at 103).  A habeas petitioner must clear a "high bar" in order to prevail on such claims.  *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

First, Petitioner is not entitled to habeas relief on the claim that the prosecutor improperly elicited gang-related testimony.  The Michigan Court of Appeals rejected this argument on the basis that the evidence was relevant.  *Roche*, 2016 WL 2731063, at *6-8.  The Court agrees.  As discussed above, the gang-related evidence was relevant to the witnesses' credibility and admissible under state law.  A prosecutor's good faith effort to admit evidence does not constitute misconduct, particularly where, as here, the trial court admits the evidence.  *Cristini v. McKee*,

15

526 F.3d 888, 900 (6th Cir. 2008).  Petitioner fails to show that the prosecutor erred, let alone that such conduct rendered his trial fundamentally unfair.

Second, Petitioner is not entitled to relief on the claim that the prosecutor improperly implied that he was involved with the Howard Boys gang and misstated facts not in evidence. Petitioner contends that the prosecutor misstated witness testimony to establish a connection between him and the Howard Boys. The Michigan Court of Appeals rejected Petitioner's arguments and determined that the prosecutor did not err in her questioning, but if any error did occur, it did not substantively affect Petitioner's rights in light of the trial court's instructions that attorney questions are not evidence.  *Roche*, 2016 WL 2731063, at *7-8.

The Michigan Court of Appeals' ruling is neither contrary to Supreme Court precedent nor an unreasonable application of federal law.  During trial, the prosecutor asked Michael Roche if Petitioner was involved with the Howard Boys, which he did not confirm.  (ECF No. 17-7, PageID.1042.)  The prosecutor also asked other witnesses if Petitioner held any "legal" jobs and if Petitioner was involved in selling "dope."  (ECF No. 17-5, PageID.766; ECF No. 17-7, PageID.1042.)  Petitioner fails to show that the prosecutor's questions or comments violated his due process rights when the trial court instructed the jury that statements and questions by attorneys are not evidence.  (ECF No. 17-8, PageID.1167-68.)  Moreover, the Court assumes, in the absence of evidence to the contrary, that the jury followed those instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions").  For these reasons, Petitioner is not entitled to habeas relief on this claim.

C.  Confrontation Clause Claims (habeas claims VI and VII)

In his sixth claim, Petitioner argues that he was denied his Sixth Amendment right to confrontation when the prosecution presented testimonial hearsay statements through a report prepared by a firearms analyst who did not testify.  His seventh claim asserts that he was denied his right to confrontation when the prosecution presented testimonial hearsay statements through a laboratory report prepared by a DNA analyst who did not testify.

1.  Firearms Analyst

With respect to Petitioner's sixth claim, the Michigan Court of Appeals disposed of the claim on the basis of waiver.  *Roche*, 2016 WL 2731063, at *11.  The Court agrees and concludes that this claim is waived because defense counsel agreed to the admission of the ballistics report and did not object to the expert testimony.  Waiver is an " 'intentional relinquishment of a known right.' " *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A criminal defendant who has waived his rights "may not then seek appellate review of claimed deprivation of those rights, for his waiver has extinguished any error." *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996) (citing *Olano*, 507 U.S. at 733-34); *see also Shahideh v. McKee*, 488 F. App'x 963, 965 (6th Cir. 2012) ("waiver is a recognized, independent and adequate state law ground for refusing to review alleged trial errors"). The right to confrontation may be waived, including by a failure to object to the "offending evidence." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 314, n. 3 (2009).

During trial, defense counsel admitted the report prepared by firearm and tool analyst Ronald Ainsley as an exhibit, and then cross-examined expert witness Lieutenant Crichton, Ainsley's laboratory supervisor, on his review of the report.  (ECF No. 17-7, PageID.971.) Ainsley's report concluded that the caliber of bullet found at the crime scene was a .9 millimeter.

(ECF No. 17-7, PageID.972.)  However, Lieutenant Crichton disagreed with the conclusion and testified that the caliber bullet was a .38 caliber.  The prosecution would later present evidence that the .38 caliber bullet matched a gun owned by Petitioner.  Defense counsel did not object to Lieutenant Crichton's testimony about the contents of Ainsley's report.

Because defense counsel sought admission of Ainsley's report, and failed to object to his testimony, Petitioner has waived review of his Confrontation Clause claim.  *See United States v. Chun Ya Cheung*, 350 F. App'x 19, 21-22 (6th Cir. 2009).  Moreover, a defendant in a criminal case cannot complain of error which he himself has invited.  *Shields v. United States*, 273 U.S. 583, 586 (1927).  When a petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error.  *See Fields v. Bagley*, 275 F.3d 478, 486 (6th Cir. 2001).  By agreeing to the admission of the statements, Petitioner is precluded from seeking habeas relief on this claim.

    2.  <u>DNA Analyst</u>

Petitioner next argues that his right to confrontation was violated when the trial court allowed testimony from an expert witness who relied upon a report prepared by another DNA analyst who did not testify during trial.  Petitioner did not raise this issue before the state courts. The Court will review it de novo.

The prosecution called Amelia Proctor, an employee of the Michigan State Police, to testify as an expert witness on DNA identification. (ECF No. 17-7, PageID.974.)  According to Proctor, articles of clothes and other items were sent to her lab and samples were taken from those items and sent to Bode Technology Group through a federal grant because of the Michigan State Police's backlog.  DNA profiles were generated by Bode, and the lab prepared a report, which was then reviewed by Michigan Stare Police analyst Ann Gordon, who compared the DNA profiles and

prepared her own report.  (*Id*. at 990.)  Her signature was on the report admitted during trial.  (*Id*. at 991.)   Based on her comparison of the DNA profiles, Gordon concluded that "the stain on the jeans matched the profile of Ralph Matthews." (*Id*. at 990.)  And that "the profile obtained from the tag from the jeans matched the DNA profile from Terrell Roche."  (*Id*. at 988.)

The Confrontation Clause of the Sixth Amendment provides: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.  In *Crawford v. Washington*, the Supreme Court held that out-of-court statements that are "testimonial" in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination regardless of whether the trial court finds the statements to be reliable. 541 U.S. 36, 68 (2004). The Confrontation Clause is not implicated, however, when the hearsay at issue is non-testimonial. *See Davis v. Washington*, 547 U.S. 813, 823–26 (2006). The proper inquiry in deciding whether a statement is testimonial is "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2005).

In *Melendez-Diaz v. Massachusetts*, the Supreme Court extended *Crawford's* holding to certain forensic reports, holding that the admission of a forensic analyst's certificate of analysis without in-court testimony by the analyst violated a defendant's right to confrontation. 557 U.S. 305, 321–22 (2009).  In that case, the trial court admitted the notarized analysts' affidavits stating that substances recovered from the defendant contained cocaine, but the analysts did not testify in person. Describing the analysts as actual "witnesses" and the certificates as "functionally identical" to their "live, in-court testimony," the Supreme Court concluded that, without cross-examination, the defendant was precluded from ascertaining "what tests the analysts performed, whether those

tests were routine, and whether interpreting their results required the exercise of judgment or the use of skills that the analysts may not have possessed." *Id*. at 310–12. Accordingly, the defendant was entitled to be confronted with the analysts at trial, unless the prosecution showed not only that the analysts were unavailable but also that the defense had a prior opportunity to cross-examine them. *Id*. at 311.

Subsequently, the Supreme Court determined in *Bullcoming v. New Mexico*, that a certified laboratory report of a forensic analyst who tested the petitioner's blood alcohol level was testimonial because it served the purpose of " 'establishing or proving some fact' in a criminal proceeding," 564 U.S. 647, 664 (2011) (citation omitted), and the prosecution could not bypass Confrontation Clause protections by offering for cross-examination another laboratory technician who was merely familiar with the procedure but did not conduct the actual test. 564 U.S. at 663–65.

Based on this Supreme Court precedent, the Court concludes that the admission of Proctor's testimony based on the DNA report violated Petitioner's right to confrontation.  Much like in *Bullcoming*, the prosecution in this case introduced a laboratory report through a DNA analyst that was familiar with the lab's procedure, but did not prepare the report or conduct any testing herself.   Gordon, not Proctor, authored and signed the laboratory report concluding that the stain on the jeans matched the victim's DNA profile and that the profile obtained from the tag from the jeans matched Petitioner's DNA profile.  The report was testimonial because it served the purpose of "establishing or proving some fact in the criminal proceeding." *Bullcoming*, 564 U.S.at 664 (citation and quotation marks omitted).  Petitioner was not afforded the right to cross-examine Gordon on her analysis and conclusions of the DNA profiles.

Nevertheless, Petitioner is not entitled to relief on this claim. "Confrontation Clause violations do not require automatic reversal, and are instead subject to harmless-error analysis." *Reiner v. Woods*, 955 F.3d 549, 555 (6th Cir. 2020). This means "the error must have had a 'substantial and injurious effect or influence in determining the jury's verdict.' " *Id*. (citing *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)). To determine whether a Confrontation Clause violation is harmless on habeas review, a court considers: "(1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case." *Jensen v. Romanowski*, 590 F.3d 373, 379 (6th Cir. 2009) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)); *see also Reiner*, 955 F.3d at 557.

Applying these factors, the testimony was certainly helpful to the prosecutor's case because it suggested that Petitioner was likely with the victim during the time of the offense, even though the age of the blood stain could not be determined, (ECF No. 17-7, PageID.999). However, other testimony established this fact as well. Evidence was presented that Petitioner "near the time of the offense, . . . went to a friend's house, which was in the same neighborhood as Matthews's house, and asked for a change of clothing because he had robbed a drug addict." *Roche*, 2016 WL 2731063, at *3. The jury, therefore, heard other evidence that Petitioner was near the victim at the time of his murder. Further, no evidence was presented that contradicted the expert's testimony and defense counsel seized the opportunity to thoroughly cross-examine the expert on the DNA findings. Finally, DNA evidence aside, the prosecution presented ample evidence that supported Petitioner's convictions. As explained by the Michigan Court of Appeals:

> [D]efendant made statements to at least three other witnesses that linked him to
> Matthews's murder. Darryl Scott testified that on the day of the offense, defendant

> told him that he "was going to get some money" from his "dad's house." Xavier Turner testified that defendant told him that he shot Matthews when he went to his house "to rob" him, and that he tried to "burn the house down." Paki Bonner testified that defendant told him that he shot Matthews when he went to rob him, that he took "some jewelry" and "a bit of dope," and that he tried to "burn the house up."

*Roche*, 2016 WL 2731063, at *3. The prosecution also presented evidence that the .38 caliber bullet used to kill Matthews matched a gun owned by Petitioner. This evidence was sufficient to convict Petitioner of first-degree murder, arson, and felony-firearm. For these reasons, Petitioner's claim must fail.

### D.   Ineffective Assistance of Trial Counsel Claims (habeas claims V and VIII)

In his fifth and eighth claims, Petitioner asserts various instances of ineffective assistance of counsel. Specifically, he argues that trial counsel was ineffective for failing to object to the admission of gang-related testimony and Sergeant Angus's testimony that Petitioner was the suspected shooter. He also argues counsel was ineffective for failing to call firearm and tool mark analyst Ronald Ainsley as a witness and for failing to object to evidence in violation of the confrontation clause. Neither of Petitioner's ineffective assistance of trial counsel claims entitle him to habeas relief.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. When counsel is ineffective, that right is abridged. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient, and that deficiency prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). An attorney's performance meets the first element when "counsel's representation [falls] below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the

Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

Success on ineffective assistance of counsel claims is relatively rare, because the *Strickland* standard is " 'difficult to meet.' " *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)). And under AEDPA, obtaining relief under *Strickland* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 562 U.S. at 105.

23

1.   Failure to Object to Irrelevant Evidence

Petitioner argues that trial counsel provided ineffective assistance by failing to object to irrelevant, prejudicial evidence elicited by the prosecutor. The Michigan Court of Appeals rejected this argument and concluded that counsel's actions were sound trial strategy. *Roche*, 2016 WL 2731063, at *10. The Michigan Court of Appeals' decision was not an unreasonable application of federal law.

To succeed on the first part of *Strickland*, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Petitioner has presented no evidence to overcome the presumption that counsel's decision to abstain from objecting to the gang-related evidence constituted reasonable trial strategy. The Court agrees with the court of appeals' assessment that "Counsel may have viewed the evidence of certain prosecution witnesses' gang affiliation as more favorable than harmful, because it might cause the jury to discredit the witnesses' testimony because of their gang affiliation." *Roche*, 2016 WL 2731063, at *10. Moreover, given this Court's decision that the gang-related testimony was admissible under state law and did not render the trial fundamentally unfair, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct. Attorneys do not provide constitutionally ineffective assistance for electing not to take futile actions, *Richardson v. Palmer*, 941 F.3d 838, 857 (6th Cir. 2019) (citing *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000)), or for "failing to raise . . . meritless arguments." *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999); *see also Downs v. United States*, 879 F.3d 688, 691 (6th Cir. 2018); *Kelly v. Lazaroff*, 846 F.3d 819, 831 (6th Cir. 2017). Petitioner fails to establish ineffective assistance of counsel on this basis.

Petitioner also fails to show that counsel was ineffective for failing to object to Sergeant Angus's testimony that Petitioner was the suspected shooter.  The Michigan Court of Appeals rejected Petitioner's argument that the testimony was irrelevant and prejudicial and concluded that "the introduction of this evidence was not plain error and did not affect defendant's substantial rights."  *Roche*, 2016 WL 2731063, at *11.  The court did not unreasonably apply federal law. Petitioner has not shown that the evidence was inadmissible under Michigan law.  Any objection by counsel to its admission likely would have been overruled, and the failure to raise futile objections is insufficient to establish ineffective assistance.  *Richardson,* 941 F.3d at 857.

   2.   Failure to Call Witness/Object to Evidence

Petitioner further asserts that counsel was ineffective for failing to call firearms analyst Ronald Ainsley as an expert witness and failing to object to Lieutenant Crichton's testimony.  He also argues that counsel was ineffective for failing to object to DNA evidence admitted in violation of his right to confrontation.

First, the Court concludes that Petitioner is not entitled to relief on the claim that counsel was ineffective for failing to call Ainsley as a witness and failing to object to the testimony of Lieutenant Crichton.  Petitioner raised this argument in his motion for relief from judgment.  The state trial court denied the motion based on the Michigan Court of Appeals' ruling that "Defense counsel's strategy [was] apparent from her closing argument in which she used the lieutenant's testimony and Ainsley's report to challenge not only the credibility of Lieutenant Crichton, but also to discredit the police investigation."  *Roche*, 2016 WL 2731063, at *12.

The state courts' decision was not an unreasonable application of federal law.  First, Petitioner has not overcome the presumption that defense counsel's actions were sound trial strategy.  *Strickland*, 466 U.S. at 689.  The parties learned that the ballistics report contained a

25

mistake as to the caliber of bullet on the day of trial.  Rather than simply object to the testimony or seek an adjournment to call Ainsley as a witness, defense counsel acted reasonably under the circumstances by seeking to discredit the accuracy of the lieutenant's interpretation of the ballistics report in her cross-examination and closing argument.  Counsel rigorously scrutinized the lieutenant's testimony by calling out the mistakes made in Ainsley's report under the lieutenant's supervision, which also had the effect of discrediting the integrity of the police investigation.  (ECF No. 17-8, PageID.1148.)  Petitioner fails to rebut the presumption that this was reasonable trial strategy.

Nor has Petitioner established that he was prejudiced by counsel's actions.  Petitioner has presented no evidence, either to the state court or to this Court, that Ronald Ainsley was available and willing to testify with respect to the ballistics report.  A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation.  *See Keith v. Mitchell*, 455 F. 3d 662, 672 (6th Cir. 2006).  Further, Petitioner has not offered any evidence what the content of this witness' testimony would have been.  In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call an expert witness to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim.  *See Clark v. Waller*, 490 F. 3d 551, 557 (6th Cir. 2007).  For these reasons, he is not entitled to habeas relief on this basis.

Second, Petitioner is not entitled to relief on his claim that counsel was ineffective for failing to object to DNA evidence admitted in violation of his right to confrontation.  Although the Court concludes that counsel's actions were objectively unreasonable for the reasons stated in earlier in the opinion, Petitioner cannot establish that he was prejudiced by counsel's actions. "The prejudice prong of the ineffective assistance analysis subsumes the *Brecht* harmless-error review."

*Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009). This Court already determined that the admission of the DNA report and expert testimony was harmless error. Because the admission of this evidence was harmless error, Petitioner cannot satisfy *Strickland's* prejudice requirement. *See, e.g., Bell v. Hurley*, 97 Fed. App'x. 11, 17 (6th Cir. 2004). Therefore, Petitioner is not entitled to relief on this claim.

    E. <u>Ineffective Assistance of Appellate Counsel (habeas claim X)</u>

Lastly, Petitioner argues that appellate counsel was ineffective for failing to raise the Confrontation Clause violations and related ineffective-assistance-of-counsel claims on direct appeal. Petitioner raised this claim, in part, in his motion for relief from judgment. The state-trial court denied the claim on the basis that the Michigan Court of Appeal decision and the State's response brief to the motion were instructive and dispositive of the issue.

Petitioner fails to show appellate counsel provided ineffective assistance. It is true that the Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985); *Halbert v. Michigan*, 545 U.S. 605, 609-10 (2005). But court appointed appellate counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). A habeas court reviewing an ineffective-assistance-of-appellate-counsel claim must defer twice: first to appellate counsel's decision not to raise an issue, and secondly, to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 578 U.S. 113, 119 (2016) (per curiam).

Here, Petitioner's appellate attorney did not perform deficiently by failing to raise the Confrontation Clause and related ineffective-assistance-of-counsel claims on direct appeal. For all of the reasons stated above, Petitioner has not shown that these claims were meritorious.

"[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.' " *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Therefore, counsel was not ineffective in failing to raise them.

## IV. CERTIFICATE OF APPEALABILITY

The Court declines to grant a certificate of appealability because Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  In addition, reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the claims deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Therefore, the Court will deny a certificate of appealability.

## V. ORDER

Based upon the foregoing, the Court:

(1) DENIES the Petition for a writ of habeas corpus;

(2) DENIES a certificate of appealability; and

**(3) DENIES** Petitioner leave to appeal *in forma pauperis*.

**IT IS ORDERED.**

s/ Victoria A. Roberts
VICTORIA A. ROBERTS
United States District Judge

Dated:  August 28, 2023